UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. LAWRENCE J. O'NEILL

UNITED STATES OF AMERICA,    )
                             ) 1:07-cr-168  LJO
            Plaintiff,       )
                             ) CHANGE OF PLEA
        vs.                  )
                             )
JOHN DELOS WILSON,           )
                             )
            Defendant.       )
_____)

Fresno, California                 Friday, March 21, 2008


REPORTER'S TRANSCRIPT OF PROCEEDINGS


REPORTED BY:  PEGGY J. CRAWFORD, RDR, CRR, Official Reporter

APPEARANCES OF COUNSEL:

For the Government:          **SHEILA OBERTO**
                            Assistant U.S. Attorney
                            2500 Tulare Street, Rm. 4401
                            Fresno, California  93721

For the Defendant:          FEDERAL DEFENDER'S OFFICE
                            2300 Tulare Street
                            Suite 330
                            Fresno, CA  93721
                            BY:  **MELODY M. WALCOTT**
                                 Assistant Federal Defender

1   Friday, March 21, 2008                    Fresno, California

2          THE COURT:  Item 2, United States versus John Wilson,

3   Action Number 168.

4          MS. WALCOTT:  Your Honor, can we approach for just a

5   minute?

6          THE COURT:  Sure.

7          (Discussion was had at the sidebar off the record.)

8          THE COURT:  We will recall that case in just a few

9   minutes.

10          (The Court heard another matter.)

11          THE COURT:  Returning to number 2, John Wilson,

12   number 168.

13          MS. WALCOTT:  Melody Walcott, Federal Defender's

14   Office, for John Wilson, who is present in court in custody.

15          MS. OBERTO:  Sheila Oberto for the United States.

16          THE COURT:  Are you John Wilson?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Sir, raise your right hand and be sworn.

19          (Defendant sworn.)

20   BY THE COURT:

21   Q.  Mr. Wilson, I think I have your change of plea form right

22   here in front of me, and your signature on the last page.  Do

23   you recognize this document?

24   A.  Yes, sir.

25   Q.  And your signature?

1  **A.**  Yes, sir.

2  **Q.**  To me, this means that you have also had a chance to

3  review this document in its entirety, and if you had

4  questions, you've asked those questions, and they have been

5  answered to your satisfaction with your lawyer.

6         Is that a fair understanding on my part?

7  **A.**  That is correct.

8  **Q.**  And in looking at this document -- first of all, you

9  understand you are now under oath, and if you were not to tell

10  me the truth in responding to questions, that the government

11  could bring the charges against you at a later time for

12  perjury?

13  **A.**  Yes, sir.

14  **Q.**  Do you have any questions about what that means?

15  **A.**  No, sir.

16  **Q.**  In looking at this document, this change of plea form, at

17  page 2, from lines 20 through 24, those are the elements of

18  the crime to which I believe you are pleading.  Do you see

19  them there?

20  **A.**  Okay.  Just for a second.  Can I ask you a question?

21         THE COURT:  Why don't you ask your lawyer first, and

22  then if you want to ask me the question after, that would be

23  fine, you know, as long as there is no objection that I need

24  to deal with.

25         (The defendant and his counsel conferred off the

1   record.)

2         MS. WALCOTT:  What Mr. Wilson is asking me is if he

3   could ask the Court if the document is true and correct, and I

4   was explaining to him that that's part of the reason that we

5   are going through it, is to make sure that Mr. Wilson

6   understands that everything that's in the document and that

7   everyone is in agreement with everything that's in the

8   document.

9         THE COURT:  Do you have a concern?

10        THE DEFENDANT:  No, sir.  I want to make sure the

11   document is true and correct, if the Court agrees it is true

12   and correct.

13        THE COURT:  I'm not really sure what you are asking

14   me as far as it's being true and correct.

15        THE DEFENDANT:  Just, there was one thing in here

16   that we want to change, right?

17         (The defendant and his counsel conferred off the

18   record.)

19         MS. WALCOTT:  Okay.  He is clear now.  Maybe I should

20   say it now, so that we have it out of the way.  Page number 9,

21   paragraph T, 3T, it begins at line 10.

22        THE COURT:  I see it.

23        MS. WALCOTT:  We just have an addition to that or

24   clarification, I'm not sure which one.  The statement is that

25   "The defendant agrees to participate in and complete any

1  outpatient and/or in-patient mental health treatment programs,

2  as directed by the Probation Office."

3  　　　　We are not disagreeing with that.  However, we have

4  had discussions with the prosecutor about Mr. Wilson not

5  agreeing to any participation in a sex offender treatment

6  program.  And so we just wanted to make that clear.

7  　　　　Other than that, we don't have any exceptions to

8  anything in the plea agreement at all.

9  　　　　THE COURT:  If it goes against the agreement, that

10  does not necessarily mean -- and I want to make sure this.

11  This is an important concept for you to understand -- that

12  does not necessarily mean that the Court would not order such

13  a program.  And if the Court ordered such a program, and you

14  wanted a hearing on objecting to that order, you would notify

15  your lawyer, and the United States Attorney would be notified,

16  so would Probation, and we would have a hearing in regard to

17  it.  But that does not mean that the Court is agreeing that

18  you would not be ordered to participate in such a program.

19  　　　　THE DEFENDANT:  Okay.

20  　　　　THE COURT:  Do you understand the difference of what

21  your attorney is saying to me and what I'm saying back to you?

22  　　　　THE DEFENDANT:  Right.  I understand.  That's the

23  reason why I asked if it was true and correct.

24  BY THE COURT:

25  Q.  Now, do you have any other questions about this document?

1   **A.** The only other thing that I would ask is regarding the one

2   on the appeal issue, the appellate issue.

3   **Q.** Yes?

4   **A.** That I would be allowed to on it. It talks about --

5         Where is it at?

6   **Q.** Where are you looking?

7         MS. WALCOTT: Line 22, I believe he is looking at, on

8   page 3.

9         MS. OBERTO: Your Honor, we have already spoken about

10   that. And there is a very -- from lines 23 to -- 22 through

11   25, that is a specific issue that has been reserved and the

12   only specific issue.

13         THE DEFENDANT: Yes. The issue is on the appointment

14   of counsel.

15         THE COURT: I'm reading it. You are of the apparent

16   opinion that you have the right to specify a particular lawyer

17   who will be appointed to represent you when you are an

18   indigent defendant.

19         THE DEFENDANT: That is correct.

20         THE COURT: You want to reserve that issue for

21   appeal?

22         THE DEFENDANT: Right, on the appointment of counsel,

23   yes.

24         THE COURT: On that issue only.

25         THE DEFENDANT: On the appointment of counsel, yes.

1    THE COURT:  Specifically, what is on page 3, lines 22

2  through 25, that's right before you now.

3    (The defendant and his conferred off the record.)

4    THE DEFENDANT:  I think it was more like the

5  appointment of counsel than general, is what -- I have to

6  relook at it, but that's, basically, what it is on specifics.

7    THE COURT:  Well, we need to make sure what it is,

8  because once you waive your rights on appeal and you hold back

9  one portion of it, it is important for you to know and it is

10  important for everybody else to know, including the

11  government, since they are entering into this agreement with

12  you, that they know exactly what they are entering into and

13  you understand what you are entering into.

14    And that -- based on my reading of this, you are

15  saying that you are waiving your appellate rights with one

16  exception, and that exception is that you believe, as an

17  indigent defendant, that you are still entitled to designate

18  the lawyer to be appointed on your behalf to represent you.

19    THE DEFENDANT:  What I'm saying is I have the right

20  to have the Court appoint me an attorney.

21    MS. WALCOTT:  That was the issue that we discussed --

22    THE COURT:  Well, didn't the Court do exactly that?

23    MS. OBERTO:  Yes.

24    THE DEFENDANT:  Well.

25    MS. OBERTO:  Your Honor --

1        MS. WALCOTT:  That's the issue.

2        THE DEFENDANT:  That's the issue.

3        MS. WALCOTT:  What the Court actually did is what the

4 Court always does, which is it appointed our office to

5 represent Mr. Wilson.

6        THE COURT:  The Federal Defender's Office.

7        MS. WALCOTT:  Correct.  And Mr. Wilson's position is

8 that --

9        THE DEFENDANT:  You already ruled on this.

10       MS. WALCOTT:  You did.  You addressed this issue

11 earlier, around the time that we had argument on the motions

12 to suppress.

13       What the Court -- what Mr. Wilson believes is that a

14 person should be appointed.

15       THE COURT:  Rather than the Federal Defender's

16 Office.

17       MS. WALCOTT:  Correct.

18       THE DEFENDANT:  That's what I'm saying.

19       THE COURT:  That's the appellate issue you are

20 reserving?

21       THE DEFENDANT:  Yes.

22 BY THE COURT:

23 **Q.**  Any other questions about this document?

24 **A.**  No, sir.

25 **Q.**  Then looking at page 2 of this document, on the elements,

1   I think we went through them, but did you have any questions

2   about what they mean?

3         MS. OBERTO:  I'm not sure that the Court has gone

4   through the elements yet.

5   BY THE COURT:

6   **Q.**  Do you see on page 2, lines 20 through -- almost 24, do

7   you see those elements?

8   **A.**  Yes.

9   **Q.**  Is there anything you do not understand about those

10   elements as you read them right now?

11   **A.**  No, sir.

12   **Q.**  And on page 10 of this document are the factual bases for

13   Count 2 and Count 3.  It's from line 6 all the way -- almost

14   to the bottom, line 25.  Do you see those?

15   **A.**  That is correct.  I do see them.

16   **Q.**  Is there anything about any of that factual statement on

17   Count 2 or Count 3 that you do not understand?

18   **A.**  No, sir.

19   **Q.**  Is there anything you disagree with with regard to the

20   factual basis on Count 2 and Count 3?

21   **A.**  No, sir.

22   **Q.**  And then on page 11, is the maximum possible sentencing.

23   And that is as to each count, a maximum of ten years, fine of

24   $250,000 or both, a maximum life supervised release, and

25   should you violate any of the terms of your supervised

1  release, you could be returned to prison for the remaining

2  period of supervised release actually imposed by the Court, or

3  five years, whichever is less, and also a mandatory penalty

4  assessment of $100 per count.  Do you understand that to be

5  the maximum possible sentence?

6  **A.**  Yes, sir.

7  **Q.**  And you understand that this does require a sex

8  registration?

9  **A.**  Yes, your Honor.

10  **Q.**  And you also understand that with regard to the rights you

11  have here, you do have a right, as you stand here now, to

12  continue to plead not guilty?

13  **A.**  Yes, your Honor.

14  **Q.**  If you continued to plead not guilty, if that's what you

15  wanted to do, we would set the matter for trial by judge or by

16  jury, your choice, but we would set the matter for trial in a

17  timely fashion under the statutes and under the United States

18  Constitution, specifically the Speedy Trial Act.  Do you

19  understand?

20  **A.**  Yes, your Honor.

21  **Q.**  If we do that, you would have a right to be here during

22  the entire trial, your lawyer would be here for you during the

23  entire trial, the government would have the burden of proving

24  the case against you beyond a reasonable doubt, and they would

25  attempt to do that by bringing in witnesses and evidence.

1    You would watch those witnesses testify against you.

2  Your lawyer would ask those witnesses questions or

3  cross-examine them.

4    You could testify, and if you didn't, that could not

5  and would not be used against you in any way.

6    You could bring in witnesses and evidence.  We would

7  help you get that here by the subpoena power of the Court.

8  The trial would be open to the public, just like today's

9  hearing is.  Do you understand those trial rights?

10  **A.**  Yes, your Honor.

11  **Q.**  And you understand that if you plead guilty, you are

12  waiving those trial rights?

13  **A.**  Yes, your Honor.

14  **Q.**  Is that what you want to do, is waive those trial rights?

15  **A.**  Yes.

16  **Q.**  Yes?

17  **A.**  Yes, your Honor.

18  **Q.**  Do you have any questions about what those trial rights

19  are, what they mean?

20  **A.**  No, your Honor.

21  **Q.**  You understand that at the time of sentencing, I'm

22  obligated to consider the Federal Sentencing Guidelines, but

23  I'm not obligate to follow them?

24  **A.**  Yes, your Honor.

25  **Q.**  And you understand I'm not part of the plea agreement, so

1  if I didn't agree with it, I don't have to follow it and you

2  can't take your change of plea back?

3  **A.**  Yes, your Honor.

4  **Q.**  Is anybody promising you anything other than what's in the

5  plea agreement?

6  **A.**  Nobody has promised me anything.

7  **Q.**  Other than what's in the plea agreement?

8  **A.**  That's correct.

9  **Q.**  Is anybody threatening you or forcing you in any way to

10  get you to change your plea here?

11  **A.**  No, your Honor.

12  **Q.**  You understand you are waiving your appellate rights,

13  except that one that we just talked about on the record that

14  you are reserving?

15  **A.**  That is correct, your Honor.

16  **Q.**  Is there any reason I should not now take the change of

17  plea?

18      MS. OBERTO:  Your Honor, I do wonder if the Court can

19  please confirm that the defendant understands that any

20  sentence imposed in this case will be served consecutively

21  with any other sentence he may now be serving.

22      THE COURT:  Do you understand what she said?

23      THE DEFENDANT:  Yes, your Honor.

24      THE COURT:  Do you have any questions what she means?

25      THE DEFENDANT:  To be after I finish my state

1  sentence.

2  　　　　THE COURT:  Yes.  In other words, the sentence I

3  would impose at the time of judgment and sentencing in this

4  case that we are here in court on right now has nothing to do

5  with any sentence that you are fulfilling right now.  And this

6  would not -- "this," being the sentence in this case, would

7  not start running until you were done with the sentence that

8  you are now fulfilling.

9  　　　　THE DEFENDANT:  That's correct.

10 　　　　MS. OBERTO:  And the defendant agrees to forfeit all

11 the letters and other materials that were seized by the U.S.

12 Postal Inspection Service at the time of the execution of

13 search warrant.  I don't think that's a problem, but I

14 thought --

15 　　　　THE DEFENDANT:  There was one question about the

16 typewriter, but that's not an issue.

17 　　　　THE COURT:  You understand that will happen?

18 　　　　THE DEFENDANT:  That is correct.

19 　　　　THE COURT:  Any other issues?

20 　　　　MS. OBERTO:  No, your Honor.

21 　　　　MS. WALCOTT:  None, your Honor.

22 　　　　THE COURT:  All right.  Then I'm going to take the

23 change of plea as to Counts 2 and 3 of the indictment.  And

24 I'm going to read these now.  And if you don't understand

25 something, you don't hear something, or a question comes into

1  your mind, I need you to interrupt me and tell me that.  Would

2  you do that?

3       THE DEFENDANT:  Yes.

4  BY THE COURT:

5  **Q.**  On Count 2, the Grand Jury charges that you, on or about

6  December 1 of 2006, in the Eastern District of California,

7  using the mail and any facility and means of interstate

8  commerce, did knowingly transfer obscene matter to another

9  individual who had not attained the age of 16 years, knowing

10  that such other individual had not attained the age of 16

11  years, and did attempt to do so by writing a letter to discuss

12  that -- that discusses sexual acts between a minor and an

13  adult to a girl who you believed to be 12-years-old, all in

14  violation of Title 18, United States Code section 1470.

15       How to you wish to plead on Count 2?

16  **A.**  Guilty, your Honor.

17  **Q.**  And on Count 3, the Grand Jury further charges that you,

18  on or about December 1, 2006, in the Eastern District of

19  California, using the mail and any facility and means of

20  interstate commerce, did knowingly transfer obscene matter to

21  another individual who had not attained the age of 16 years,

22  knowing that such other individual had not attained the age of

23  16 years, and did attempt to do so by directing a girl who you

24  believed to be 12-years-old, to, among other things, use the

25  Internet to access father/daughter incest stories and print

1  out or copy material to send out to the defendant, meaning

2  you, all in violation of 18 United States Code section 1470.

3          How do you wish to plead on Count 3?

4  **A.**  Guilty.

5          THE COURT:  The Court accepts the knowing,

6  intelligent and voluntary waiver of rights, knowing,

7  intelligent and voluntary change of plea, and as a result of

8  this, I would be inclined to set the matter for May 30, at

9  8:30, if you would like.

10          MS. WALCOTT:  Your Honor, I will be out of the office

11  on the 30th, and on the 6th.  If we could schedule it for the

12  13th of June, if that's okay with counsel.

13          MS. OBERTO:  I am currently scheduled to be in trial,

14  but it may plead, so 8:30 would be fine.

15          THE COURT:  June 13, 8:30.  Anything further?

16          MS. WALCOTT:  No, your Honor.  Thank you.

17          MS. OBERTO:  Thank you, your Honor.

18          (The proceedings were concluded at 10:15 a.m.)

19

20          I, PEGGY J. CRAWFORD, Official Reporter, do hereby

21          certify the foregoing transcript as true and correct.

22

23  Dated:  08/11/2008          /s/ Peggy J. Crawford
                                PEGGY J. CRAWFORD, RDR-CRR
24

25